UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-122-EEF-DMD |
| SHELL OFFSHORE INC., | ) |
| Defendant. | ) |

## UNITED STATES' UNOPPOSED MOTION TO ENTER CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Coast Guard, respectfully requests that the Court sign and enter the proposed Consent Decree between the United States and Defendant Shell Offshore Inc. Consent Decree, ECF No. 2-1 ("CD"). The Consent Decree was lodged on January 8, 2019, the same day the Complaint was filed. The Complaint seeks civil penalties and injunctive relief under Section 311 of the Clean Water Act ("CWA" or "the Act") for the May 2016 oil spill from Shell's oil production facility in Green Canyon Block 248 in the Gulf of Mexico. Compl., ECF No. 1.

The proposed Consent Decree will resolve the United States' civil penalty and injunctive relief claims against Shell and conclude the action. The proposed Consent Decree was negotiated by the parties in good faith and is fair, adequate, reasonable, and consistent with the objectives of the Clean Water Act. No public comments were submitted during the 30-day comment period after the lodging of the Decree, and Defendant consents to entry of the Decree without further notice. CD ¶ 60. Therefore, the United States requests that the Court enter the Consent Decree as

1

a final judgment by executing page 19 of the Decree. A proposed order granting this motion is also attached for the Court's consideration.

## NATURE OF THE CASE

This is an oil spill enforcement action under Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b).[1] In the Complaint, the United States alleges that Shell is liable under the Clean Water Act for the crude oil spill that began on the night of May 11, 2016, at Shell's Green Canyon Block 248 offshore production facility located 97 miles offshore in the Gulf of Mexico. The Complaint alleges the spill began when a 6-inch-diamater transfer pipeline at the sea floor cracked due to stress on a joint in the line. Compl. ¶¶ 16, 21. Shell caused this added stress by placing sediment and debris from other operations on top of the pipe, which caused the pipe to settle into the sea bed. Compl. ¶¶ 21-22. In addition, the Complaint alleges that Shell failed to properly train its control room operators to detect and respond to subsea pipeline leaks. Compl. ¶ 19. As a result of the pipeline crack and delayed response, approximately 1,900 barrels (approximately 80,000 gallons) of crude oil flowed into the ocean. Compl. ¶¶ 17, 23.

In a separate settlement filed in July 2018 and approved by the Court in August 2018, Shell agreed to pay a total of $3.871 million to the United States and Louisiana to compensate the public for injuries to natural resources caused by the oil spill and to reimburse all of the state and federal trustees' remaining unpaid past assessment costs related to the spill. Case No. 2:18-cv-6495-EEF-DEK.

---

[1] Under CWA Section 311(b)(1), "it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon" waters of the United States or adjoining shorelines. 33 U.S.C. § 1321(b)(1).

## **TERMS OF THE SETTLEMENT**

Entry of the Consent Decree as a final order will resolve the claims in this civil action. Under the Consent Decree, Shell will pay $2.2 million in civil penalties. CD ¶ 7. In addition to payment of penalties, the Decree requires Shell to improve and maintain its leak-detection training program across its operations in the Gulf of Mexico. CD ¶ 11. Since the spill, Shell has provided enhanced training to its control room operators and subsea supervisors. Shell will now be required to develop and conduct refresher training that focuses on leak detection and includes simulator-based exercises that incorporate conditions experienced during the May 2016 spill.

## **STANDARD FOR ENTRY**

In reviewing a proposed consent decree, the court is to ascertain whether the decree is fair, adequate, and reasonable, *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977), as well as consistent with the objectives of the statute under which the action was brought, *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (en banc) (per curiam) (Rubin, J., concurring) (citation omitted). "The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *City of Miami*, 664 F.2d at 441 n.13 (Rubin, J., concurring) (citation omitted). *See also United States v. Hyundai Motor Co.*, 77 F.Supp. 3d 197, 199–200 (D.D.C. 2015) (recently discussing standard for entry of consent decrees). The court does not "substitute its judgment for that of the parties to the decree." *United States v. Wallace*, 893 F. Supp. 627, 631 (N.D. Tex. 1995) (citation omitted). *See also Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (citation omitted).

Finally, "public policy strongly encourages the settlement of cases." *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 547 n.2 (5th Cir. 1988). The presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency . . . which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)); *see also Wallace*, 893 F. Supp. at 631 (citation omitted) (recognizing strong presumption of validity in agency settlement). Courts should be sensitive to the "resources consumed by the federal agencies in negotiating these decrees, as well as the chance justly to finalize a matter that otherwise would burden agencies and courts . . . ." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 851 (5th Cir. 1975).[2]

## **DISCUSSION**

The proposed Consent Decree is consistent with the public objectives sought to be attained by the Clean Water Act and is fair, adequate, and reasonable. It meets the standard of entry and should be entered as a final order of the Court.

The Clean Water Act prohibits the "discharge of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, . . . or (ii) in connection with activities under the Outer Continental Shelf Lands Act . . . in such quantities as may be harmful . . . to the public health or welfare or the environment of the United States . . . ." 33 U.S.C.

---

[2] Given the presumption in favor of settlements, the standard is sometimes stated in the negative: that in approving a consent decree, the court "assures itself . . . that the terms of the decree are not unlawful, unreasonable, or inequitable." *United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975) (citation omitted).

§ 1321(b)(3), (4). Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a]ny person who is the owner, operator, or person in charge of any . . . offshore facility . . . from which oil . . . is discharged in violation of paragraph (3)," is subject to civil penalties. Civil penalties authorized by the Act are intended to punish and serve as general and specific deterrence measures to promote compliance with the law. *See, e.g.*, *Tull v. United States*, 481 U.S. 412, 422–23 (1987) (holding CWA penalties are to punish and deter). Injunctive relief is authorized under the Act to secure "any relief from any person . . . as may be necessary to abate such endangerment" to public health or welfare. 33 U.S.C. § 1321(e)(1)(A). District courts have broad jurisdiction "to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2).

The proposed Consent Decree appropriately serves the objectives of the Clean Water Act by requiring substantial penalties of $2.2 million to punish the owner and operator of the polluting facility and to deter Shell and others from violating the statute in the future. CD ¶ 7. This penalty amount is based on consideration of the facts and the statutory penalty factors listed in Section 311(b)(8), 33 U.S.C. § 1321(b)(8). Based on the facts of this spill, the penalty amount is fair, adequate, and reasonable. *See, e.g.*, *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008) (noting CWA penalty in consent decree "represents the federal government's discretionary resolution of the level of penalty needed"). The penalty money will be deposited in the Oil Spill Liability Trust Fund.

The injunctive relief included in the Decree also is consistent with the goals of the Clean Water Act and is fair, adequate, and reasonable in light of the facts and circumstances of this case. The Clean Water Act maintains the Court's broad injunctive relief authority. *See, e.g.*, *United States v. ATP Oil & Gas Corp.*, 955 F. Supp. 2d 616, 635–37 (E.D. La. 2013) (addressing

injunctive relief authority under CWA Section 309). The Consent Decree requires Shell to implement and maintain training that will improve its leak detection and spill minimization response capabilities throughout its operations in the Gulf of Mexico. CD ¶ 11. Therefore, the injunctive relief measures set forth in the Decree address the underlying causes of the oil spill and are designed to help prevent future impacts.

Furthermore, the proposed Consent Decree is the result of good-faith, arms-length negotiation between the parties. The United States was represented by experienced counsel who worked closely with legal and technical staff from Coast Guard Headquarters and the Eighth Coast Guard District. Shell was represented by experienced in-house counsel with support from technical staff and corporate management. The proposed Consent Decree reflects the parties' careful and informed assessment of the relative merits of each other's positions, taking into account the costs and risks associated with litigating a case such as this one.

Entry of the Consent Decree will conserve judicial and party resources. Courts recognize that a settlement embodies a compromise by the parties: "As a general principle, a consent decree is a product of negotiation and compromise entered into by parties with divergent purposes, but aligned for the simple reason of avoiding costly and protracted litigation." *Walker v. United States Dep't of Hous. & Urban Dev.*, 912 F.2d 819, 825 (5th Cir. 1990). By settling now, the parties will avoid costly and protracted litigation.

In the Consent Decree the United States reserved the right to withhold consent based on review of any public comments. CD ¶ 60. The United States published a Notice of Lodging of the proposed Consent Decree in the Federal Register on February 1, 2019. 84 Fed. Reg. 1231 (Feb. 1, 2019). The United States did not receive any comments during the subsequent 30-day public comment period, which has now closed. The United States continues to find the terms of

the Consent Decree to be appropriate in light of the facts of this case, and the United States concludes there is no basis to withhold its consent to entry of the Decree.

## CONCLUSION

The United States respectfully requests that the Court execute page 19 of the Consent Decree, which was lodged with the Court on January 8, 2019, ECF No. 2-1, and enter the Consent Decree as a final judgment of the Court. The United States requests that the proposed Consent Decree be entered without a hearing or other proceeding. Defendant has consented to entry of the Decree without further notice. CD ¶ 60.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

    */s/ Jason T. Barbeau*
JASON T. BARBEAU, Attorney-in-Charge
Senior Trial Attorney (D.C. Bar No. 468200)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 616-8908
Fax: (202) 616-6584
E-mail: jason.barbeau@usdoj.gov

PETER G. STRASSER
United States Attorney
Eastern District of Louisiana

BROCK D. DUPRE
Assistant United States Attorney
LA Bar Roll No. 28563
650 Poydras Street, Ste. 1600
New Orleans, LA 70130
Office: (504) 680-3005
Facsimile: (504) 680-3184
Brock.dupre@usdoj.gov

OF COUNSEL:

LT Case Colaw
Staff Attorney
Eighth Coast Guard District
500 Poydras Street
New Orleans, LA 70130

## **CERTIFICATE OF SERVICE**

     I hereby certify that on March 6, 2019, a copy of the UNITED STATES' UNOPPOSED MOTION TO ENTER CONSENT DECREE in the above-captioned case was filed and served through the Court's electronic case filing system and also served on Defendant's counsel by agreement by email.

                                       */s/ Jason T. Barbeau*